181293 United States Capitol Police v. Office of Compliance Mr. Anderson May it please the Court, Rafik Anderson for the Petitioner, United States Capitol Police. It was impossible for the United States Capitol Police to commit an unfair labor practice for several reasons. The first, Capitol Police Board termination decisions are not conditions of employment. The second reason is the Capitol Police Board termination decisions are not covered under the Congressional Accountability Act. And also, Capitol Police employees, including those of the union, are not given statutory rights to challenge a Capitol Police Board termination decision. The first piece of this is the special rule for terminations specifically provides for how Capitol Police Board termination decisions are to be governed. And because of that, those matters are not conditions of employment. Conditions of employment are the only things that an arbitrator is eligible to review. The second thing is the Capitol Police Board is not covered under the CAA at all in terms of its labor management provisions. So any Capitol Police termination decision is excluded from the labor management provisions of the CAA, which makes it ineligible for an arbitrator to review. Granting an arbitrator the right or the ability to look at a Capitol Police Board termination decision would usurp Congress's position that members of the Capitol Police, including those of the union, are not eligible to have their terminations reviewed. But it doesn't say so explicitly, isn't that right? That is correct, Your Honor, and the position is it doesn't need to say so. And here's why. Capitol Police Board termination decisions are specifically provided for by the special rule on terminations. That is explicit. Two USC 1907 E1 A and B talk about the chief who does the day-to-day operations under the A provision and the Capitol Police Board who's under the B provisions. And because of that, it specifically tells you exactly how Capitol Police employees are to be terminated in terms of the process. So it doesn't have to be something that's super explicit like that because of the actual effect of what happens. So beside the special rule on terminations, the second part of it is when Congress adopted 5 USC 7121, when they incorporated that into the Congressional Accountability Act, they understood that they were not giving Capitol Police employees, including those of the union, the right to challenge their termination decisions. The way that we arrive at that is the courts of the D.C. Circuit, Seventh Circuit, and Ninth Circuit, had several cases where they talked about if you don't have the right to do serious matters of discipline by statute, then you don't get that right through the negotiated grievance process. And the reason why that makes sense- That's a follow-on from the Fausto argument? It takes its lead from the Fausto argument, but it expands upon it even more. And here's why it makes sense, Your Honors. It's because Congress has to give you the right in order to challenge your termination. Throughout the executive service and throughout the legislative branch, there's plenty of instances when Congress says you may be able to challenge a termination or a matter of serious discipline, and other times when they don't. Probably you, even the police board, has taken exceptions from arbitrators' awards up to the board. That is correct, Your Honor. And that's an avenue of review that's provided for by the concurrent resolution that adopted the regulations promulgated by the board pursuant to the authority given to them under the CAA to change the rules that would apply in the FLRA if they feel it's necessary. They do have that right, Your Honor. If the Office of Compliance feels as if something needs to be changed about the CAA, then they have the authority. Right. So there is currently an avenue of review from an arbitrator's decision. We would disagree with that. I know you disagree, but you've actually used it. We have used it. And it exists as a result of a regulation promulgated by the board under clear statutory authority that says that exceptions can be taken to the board from arbitrator decisions in cases such as this, and like the case, Rickens' case, too, same thing. Well, the reason that we disagree with that position... I know you disagree, but your argument is that part of your argument for getting to the regional circuit cases that are FAUSTO-based is there is no way to gain review of an arbitrator's decision in these circumstances. That is correct, Your Honor. And yet we know there is a way which the Capitol Police themselves have afforded that relief. And the only... You would have to make the argument that those regulations that the authority prompt existing under those regulations is against the law. That is correct. It is against the law. Well, you just say that, but you haven't said why. I'm going to get to that point. So under... I just want to be clear. The arguments that we're hearing today are the arguments you heard last month in connection with Rickens, right? They're slightly different in that, in this case, we didn't go to arbitration at all. Oh, I understand. The fact-setting is different. Like in the case that was argued in September, which dealt with willingness to arbitrate. That is correct, Your Honor. But the arguments, the fundamental arguments, which are the Technical Corrections Act, the Regional Circuit Act, the FASTA arguments are the same. They're the same, Your Honor. In all three cases. In this case, had one additional argument, which is your argument that the paternal orders claim that there was non-fair labor practice was untimely filed. That was in the Rickens case. No, you had that in this case. That was untimely filed for the ULP. You don't have an untimely... Okay. You don't have that in this case. That was the prior case. That was a slight difference there. But let me explain to the... There's a collateral estoppel issue in this case. That is correct, Your Honor. So the reason why is because 7122A prevents arbitrators from reviewing matters of serious discipline. That includes terminations. So because Congress adopted that, that is why arbitrator decisions can't be reviewed. Because in the Fausto case, and then in the follow-on cases, the thing that they were concerned about was uniformity, right? You didn't want to give rights to people who Congress didn't want to give them to. So uniformity went in the context of the CSRA. That is correct. But the number one thing... The argument here is that, fundamentally, when Congress was 78, when Congress revised the civil service system, got rid of the old Civil Service Commission, created the MSPB, and then they create, for the executive branch, a series of rights. That is correct. And not all people are treated equally under the CSRA. That is correct. Some people don't get the same quality of rights. That is correct. And so what happened after that act was passed, some people who got some second-class rights tried to regain the full rights by going to court of claims, and that was what Fausto was all about. Correct. And the argument was, well, you can't end-run what Congress created, this construct that deals with the executive branch, and you can't change that construct. That's correct. Now, along comes, a few years later, and Congress says, oh, guess what? We forgot to take care of our own employees, so we should have a CSRA for Congress. That is correct. So then, actually, CAA. That is correct. But then they said, well, it shouldn't be like the CSRA, which basically covers almost every right under the sun. There should only be maybe nine categories of rights that congressional employees have. Except there's a few, such as the Government Accountability Office. They actually have the right. That's right. So it was a unique creation for Congress. Correct. Right. That's correct. And in the unique creation for Congress, they said, well, we should take the federal labor law that applies in other agencies that allows government employees to unionize to do the same thing here. That is correct. To unionize, but not to challenge terminations. Well, that's the question. And so this is how we get there, right? So you look at what was happening in 1995. But all I'm saying is that I'm not certain, in my mind, that Fausto teaches you much about what Congress had in mind for itself. Well, what you need to look at is that legislative history piece, right? So they took testimony from the GAO, which had statutory appeals rights, and they said, you know, we don't want to lose those. They also took testimony from the LOC, which did not have those rights, and they said, we don't want them. And so when they made the CAA, it's clear that statutory appeals rights weren't included at all. That was not something that they considered. And here's how Fausto, not necessarily Fausto, but the other circuit cases play in. That law is still good law, right? So if, in fact, you were to give an arbitrator an opportunity to review matters of serious discipline, you'd have the same problem you had in those DC Seventh and Ninth Circuit problems. You'd have an inverted preference, where the employees of the GAO would actually get less rights because they have to follow a uniform body of law and case precedent, which ultimately ends up here, whereas an arbitrator can met out justice in just any way that they fashion. You also have the inverted preference where people who are given statutory rights or not included to give statutory rights are foreclosed, but members of the United States Capitol Police, their union, is actually given rights, right? Then we have the issue of an arbitrator, again, making the final decision on whether a Capitol Police officer is fit to protect Congress. You see, right now, Congress, since 1875, has always had the exclusive ability to determine who's going to protect them. That has not changed. They trust that the sergeant at arms for the House, the sergeant at arms for the Senate. Before the CAA, there wasn't a procedure pursuant to which exceptions to the arbitrator's award could be taken to the board. But the arbitrator's exceptions is not grounded in law. 5 U.S.C. 7122, which Congress adopted, prevents arbitrator decisions concerning matters of serious discipline to be appealed. What you have here is simply an arbitrator's decision with no review. And it's important to remember that a resolution is not signed by the president. This isn't something that is a law. It's just a regulation. Unless it is first superseded by the CAA. The CAA doesn't talk about anything about arbitrator review at all. And this case is about, as we talked about in the previous case. The presiding judge pointed out, when you began your argument, that it wasn't this, as you sort of have to piece this together in all its face. If the statute has any room for ambiguity on the question, then the regulation, if it were a reasonable regulation, would suffice. That is correct. But the key here is Congress adopted 7122A in whole. There's other instances from 7123 up through 7131. They didn't adopt those, right? And from 7132 to 35, they didn't adopt those. They didn't make any changes other than those changes. So when they adopted 7121 and they adopted 7122, it's clear that they accepted all of the judicial interpretations of that. And that is the cases that we're talking about. So the important thing here is that if you don't get the statutory right, you can't do it in the negotiated grievance process. Because again, it would usurp what Congress was trying to do. Congress was trying to create different classes of employees. And having an arbitrator make those decisions without review, because we say 7122A prevents any review. That is not what Congress wants. Congress wants the Capitol Police Board, as I said, with the sergeant at arms in both houses and the architect of the Capitol, to be the ones to decide who is going to protect them. And that's upon a recommendation of the Capitol Police Chief, who does the day-to-day operations and knows exactly who should and should not be part of the Capitol Police. So that's what's important here for us to remember, is that there's three reasons why employees of the Capitol Police, including those of the union, cannot challenge terminations. The first two are grounded in the special rule on terminations. The second one is because Congress never gave them the right to challenge a termination. If there are no further questions. Now, we'll save you some rebuttal time and let's hear from the other side. Thank you. Let's see, you're splitting your time, who's going first? I am a gentleman. Okay. Okay, Mr. Ullman. May it please the court, I'm John Ullman representing the Office of Compliance. As the court is aware, the Capitol Police have posed these same questions in two other cases, and one of which is before the same panel. And I think the big question here is not the questions that are posed. The big question is whether you should consider these questions in this appeal. And I would suggest to you that really what their claim is here is that they should not have to arbitrate cases if they have an arbitrability issue. That's basically what their position is. And the law in this area has been settled for a long time. It goes back to the Steelworker Trilogy in 1960, where the Supreme Court sets forth what is the role of the federal judiciary when it comes to collective bargaining, where there is a negotiated grievance procedure that provides for arbitration. And the answer to that question is that there is no role for the federal government. The answer is that those questions go back to the arbitrator. And that's not only the law that the case law has set down, but that's the law that's set forth in the Federal Service Labor Management Relations Act, which requires that the union and the agency agree on a procedure for arbitrability. And it's also, I think, the law in their contract. The contract very clearly specifies, the collective bargaining agreement says, that if there are questions of arbitrability, they go to the arbitrator. Which they did here in all these cases. Well, they did not go here. Not in this case. This case. Well, this case never got to the arbitrator. Exactly. The unfair labor practice is the refusal to arbitrate, or to obstruct the arbitration process. But Mr. Anderson's argument is, we didn't have any obligation to agree to hire, because there's no jurisdiction. That's an arbitrability question that goes to the arbitrator. I mean, since 1982, the FLRA has decided that it's an unfair labor practice. So where is that argument taking you? That we shouldn't be entertaining this appeal. We should send it back and say, this question has to, I thought the parties did agree to start to go to the arbitrator in this case. Right. No, the argument is, it's an unfair labor practice. If at the time that they decided not to go to the arbitrator, that it was not clearly established law, that they didn't have to arbitrate it. I mean, the FLRA, they first created the unfair labor practice of refusal to arbitrate in 1982. And during those 36 years, they've created only one narrow exception. And that is the exception for probationary employees. That is, if a union requests arbitration for a probationary employee, that they can refuse to arbitrate that question. And that would not be an unfair labor practice. Well, you're saying, basically, we should hold it because they had no clearly established right not to go to arbitration. They had a duty to go, and therefore, it was not a labor practice. And we don't need to reach the merits of this debate at all. Exactly. Is that argument in your brief? Yes, it is. I mean, it's the whole clearly established law argument. And that was the basis for the board's decision, that the capital police have failed to show that it was clearly established law at the time they refused to arbitrate, that they did not have the right to arbitrate this, or they did not have to arbitrate this particular issue. And the reason that exception has to be very narrow, because if it's very broad, the exception will swallow the rule. The rule is you go to the arbitrator. You have issues like this, you go to the arbitrator and let the arbitrator decide. It's really premature for the court to decide those questions, in this case, where it had not gone to the arbitrator. And if you read their brief, they really have not explained to you why it is you should address these questions. They've totally ignored the big question is, which is, why should you decide those issues in this case, particularly when you have the same issues pending before two other panels, including this panel. So there really is no reason to decide those questions in this case. I mean, and again, if you go back to the Steelworker Trilogy, the idea is that requiring arbitration in a collective bargaining agreement is designed to create kind of a system of self-government between these two parties, allowing them to resolve their issues. And the negotiated grievance process is very much a part of the collective bargaining process, so that throughout the negotiated grievance process, they have the ability to resolve this dispute between the two of them. If they cannot, they go to binding arbitration before an arbitrator. In fact, in the Steelworker Trilogy, the court recognized that in many cases, an arbitrator is going to be in a better position to decide these issues than a judge or a court, because the two of them decide who the arbitrator is going to be. And ideally, they're going to pick somebody who's going to be a specialist in the area that can resolve these issues. And so this is their own method of self-government, that this is what this unfair labor practice is designed to enforce. I mean, the one exception in this statute is that unlike under the National Labor Relations Act, where a party can go to the court and get the court to order them to go to arbitration, the only way to raise this issue is through the unfair labor practice procedure. So the union's only choice at that point is to say, hey, this isn't fair. They're not using the arbitration process that we agreed to in the contract, which is required by law, which is required by the case law. And instead, they're engaging in an unfair labor practice. And they need to be ordered to go to arbitration. So I think, quite simply, that is the position of the Office of Compliance on this. Unless anyone has any questions. But if we reach the issue on the merits, then you're in the same position you were in the two preceding cases that were here. Well, if you reach this, I think it's still an unfair labor practice. Because at the time that they made the decision. We would be saying that they were unjustified in refusing to go. They're unjustified, even if the law changes at some point after they committed the offense. Their supposed justification for not proceeding any further than they did to arbitration in this case was that there was no jurisdiction in the arbitrator. Therefore, we don't have to go. That's the same argument in both of the two preceding capital police cases, all the statutes. Absolutely. Absolutely. But that's an arbitrability question that goes to the arbitrator first. And in the other cases, at least the other unfair labor practice, it had gone to the arbitrator. Yes, in the last month's case, it had gone to the arbitrator. And the decision did go to the arbitrator. Right. And the other case was a negotiability case. And so in which they're arguing. It simply went right up to the board. Right. In which they're arguing whether you can have that provision in a new contract. Whether you can have a provision regarding arbitration. And was the case, the first case was talking about amending the existing contract that's involved in these other two cases? Well, it's about a successor agreement. So the contract that they're under now has expired. And so they're negotiating a new contract. And so the capital police have proposed to eliminate the provisions that have provided for arbitration. Is that the contract that was in place in Rickens? Yes, the prior contract was. Well, that contract is also the one that's in this case. Correct. But it's expired. Right. And then they're negotiating over the next one, which was the September case. Right. And as long as they're still, even though it's expired, they're still. Still operating under it. They still must operate under it. So it would be unfair labor practice not to. So this is the existing contract. And that clearly provides for arbitration of terminations. And in fact, I think they've always had, as long as they've had a contract, they've always had arbitration of terminations going back 18 years. I mean, so this is a sudden revelation that they can't do it. OK. All right, then let's hear from Ms. Michak. Thank you. May it please the court, my name is Megan Michak on behalf of the FOP. OK. Without belaboring the point, there is a clear unfair labor practice here. The only exception that would allow for the department, the USCP, to refuse to participate in arbitration is if there was a clearly defined law that would allow such a thing. As you have just pointed out, your honors, there are two other cases pending. There is no scenario under which the department can argue that they have to be before this court arguing about the law and that also it is a clearly defined law. So we believe that as the Office of Compliance does, that there is a clear unfair labor practice here and that it is not necessary to reach the merits of the case because the department committed the unfair labor practice by initially refusing to select an arbitrator who would issue the decision deciding the jurisdictional question of whether the arguments that the Capitol Police raises. What my recollection was that although there was initial refusal to move towards arbitration in any respect at all, there was then an agreement by the police to at least go to arbitration for arbitrability. Your honor, after the Labor Committee had filed its unfair labor practice, then the department did in fact agree to go to arbitration on both the arbitrability question and on the merits. They did not prevail on the arbitrability before the arbitrator. The Labor Committee prevailed on both the arbitrability and the merits and that matter actually was decided by the Office of Compliance Board of Directors on the department's exceptions as well. And what's happened to that? Is there an appeal going to come? There is no appeal of the Office of Compliance Board of Directors for a arbitration decision. So we're in a very similar posture to the case you heard last month of Officer Andrew Ricken, meaning we are processing... You had a different argument here in this case earlier, right? Yes. So what you're telling me is that in this particular case, the dispute has gone to arbitration. Yes, your honor, it has. And that arbitrability has been decided, which is what the police were supposed to do. Yes. However, the Office of Compliance Board of Directors has taken the position that this is not moot because it is a question that the department... ...needs to go to arbitration in the future, as it did here, because it did not agree to go to arbitration until after the union filed its unfair labor practice, which delayed the process for Officer Donaldson by quite a few months. And on that basis, the Office of Compliance Board of Directors concluded that the issue was not moot. Right, and there's no... And there isn't now... The mootness issue wasn't appealed to us. It was discussed at the board level. I believe it was discussed at the board level. But we have an obligation to decide whether or not something is moot, because if it's moot, there's no controversy. Of course. But again, here, where this could happen again at any time, the union elects to take a matter, a termination matter, to arbitration, we believe the Office of Compliance Board of Directors properly concluded that it was not moot so that we don't have to come before you on each and every case, frankly. That hopefully, once this court issues its decision, then we will not have to proceed here again. With respect, very briefly, to the policy arguments that the department raised, specifically, the department has raised some arguments that it should be up to the office, up to the United States Capitol Police Chief alone to decide who is fit for duty. Unlike other federal sector employees, for example, DEA agents, ICE agents, they are also law enforcement officers, and yet they have to go through the process. They can go through the grievance process through an arbitrator process. The arguments that some of the employees within the legislative branch might have more rights than other employees, those are policy arguments that are properly decided by Congress. They are not properly decided by the courts. If the department believes that these things are unfair, they should take that to Congress rather than asking this court to gut the employees' rights. What Congress did not do in this case is did not gut those employees' rights. Congress, when it enacted the Congressional Accountability Act, had the entire history of FAUSTO and its progeny before it, and they elected not to clearly take those employees out of the personnel system that they were setting up, which they could have done. The failure to do that indicates that, unlike the employees in FAUSTO, that first prong that FAUSTO sets out, the employees have to be accepted from the personnel system just simply does not exist here. And I see that my time is up, so if there are no further questions. Anything urgent else that you need to tell us? No, thank you, ma'am. Okay, thank you. Mr. Anderson. Thank you, Your Honor. This isn't a difficult matter. This special rule on terminations is specifically provided for by Congress, decided exactly how it wanted it to be. What's the specific, clearly established right that told you you didn't have to go to arbitration here? The specific right is the special rule. So the first part of it is the chief. Where has that been established? It's been established by its own separate legislation, special rule for terminations. And it has the part A and the part B where... That's an argument. No, Your Honor. That's an argument as to why you don't have to go to arbitration. But what's specifically established, clearly established, as in Fort Stewart Schools versus FLRA, or clearly established... That's subject to interpretation. I would disagree with that, Your Honor, because... Well, it's subject to interpretation. It's in front of the... The scope of that Technical Corrections Act is in front of this court right now. That is correct. How can it be clearly established that your view of the Technical Corrections Act is the correct one? The reason why it's not just, not the TCA all of itself. We're talking about the special rule that specifically says, for these matters, this is how Congress wants it to be. The special rule is where? Where do you find this rule? 2 U.S.C. 1907 E1A and B. 2 U.S.C. 1907 E1A and B. 2 U.S.C. 1907 E1A and B. Tells you exactly how Capitol Police Board termination decisions happen, how you get terminated as an employee from the Capitol Police. It's specific. So when you hear an argument about, it doesn't specifically say, all you have to do is go to the text and read it. The first part is A. It says the chief amongst other authorities has the ability to discharge, subject to applicable law and regulation. You move to part B. And in part B, it says that the chief has to recommend it to the Capitol Police Board, which can do one of three things. It can deny, it can approve, or it can just wait 30 days in which it's approved. And Judge. Your basis for not going to arbitration is that there's no jurisdiction in the arbitration. Absolutely, Your Honor. And that issue is subjudicate. That, exactly. That is why arbitrators only have authority over conditions of employment. As I said when I was up here the first time, there's two reasons why they don't. The first one is that it's the special rule. The second thing is, and you won't hear the Office of Compliance, Board of Directors answer this for you. Why did Congress move the Capitol Police Board outside of the CAA? Remember, before the Technical Corrections Act, the committees of Congress had the ability to issue final termination decisions. So this isn't something that's new. So that is why it's specifically provided for by. The second thing you hear is, there was reference to the National Labor Relations Act or something to that effect. Specifically provided for is under a different statute, different argument than no established law to avoid going to arbitration. The different, they're actually the same. Here's the slight difference. Well, clearly established law was established by the FLRA. As you see here in the legislative branch, we're not under the FLRA. They took it. You're shifting the P under the shells. So you're asking about clearly established law? No, you say we didn't need to go to arbitration. We didn't need to arbitrate arbitrability here. That is correct. Because it's perfectly clear that there was no jurisdiction in the arbitrator. That is the first phase of the argument. The second one is they don't have statutory rights at all. The DEA- I understand that statutory rights to appeal is they, the officer who gets sanctioned. Yeah, but what's important about this is that for matters- You're confusing me by moving the P under different shells. The compliance board has made an argument here and they made it in their brief, directly in their brief and said, in order for you, it's an unfair labor practice to refuse to go to arbitration unless you have a clearly established right not to say you don't have to go. That is correct. And your brief doesn't, your reply brief doesn't directly address that argument. It's in the opening brief, Your Honor. Well- As well as in the reply, we talk about- Your argument is basically, as I understand, the same argument you're making as to why there was no jurisdiction in the arbitrator. That is correct, Your Honor. And because there was no jurisdiction in the arbitrator, that was clearly established. And yet, how can you say it's clearly established when it's subjudicated at the moment? What happens if you lose? If we lose? If you lose in the three cases that you have in front of us here, including this case- Then what you will end up having is an arbitrator make a decision- I know what the arbitrator's gonna do, but what will it do to your right to refuse to go to arbitration? We'll have to evaluate it at that point, but- Then you'll have a clear rule that tells you you have to go. At that point, yes, and then the members of Congress will not be able to decide. I understand what may happen. Okay. All I'm trying to do is to get my hands around the argument that the Compliance Board is making that we don't need to get into the TCA and the PASTO and the Regional Circuit arguments now because you aren't able to point to a clearly established right to refuse to go to arbitration. But here- When the statute clearly says arbitrability has to be decided by the arbitrator. That is correct, but there's, like I said, I don't wanna simply just focus on the special rule. I'm not saying it's not important. What I'm saying is that they also haven't addressed the other piece, but the special rule is specific. But unlike DEA agents and things of that sort, they have statutory rights to appeal. And Capitol Police employees, especially those of the union, do not have those rights. So that's what you're gonna notice. There's a difference between the two of those. And that Congress actually instituted the policy. They created the CAA with the intent not to give Capitol Police employees, especially those of the union, no rights to challenge determination. So it's not that we should go back to Congress and seek a repair. Congress has already said exactly how they want this to go. And with the special rule, now going back to the special rule, they wanted to make clear that these matters, dealing with terminations, are not to be covered under the CAA, period. That is why they removed the board. That is why there's no right to challenge the Capitol Police board termination decisions, nor has there ever been. So I don't wanna leave the court with thinking- They removed the board. They removed the board and the TCA. So let me explain it. What, you're talking about the Technical Corrections Act? Correct. So the Capitol- Technical Corrections Act makes the final decision at the board. They removed the board. And the board used to be a part of the Congressional, it used to be covered by the Congressional Accountability Act. And so in 2010, they actually removed the board from under the CAA. But what I want you to make sure you remember is that the line of authority for who can terminate Capitol Police employees has never changed. So this isn't something novel, is what I'm saying. This isn't something new that we're asking this court to review. It's never been the case. Yeah, instead of the police chief going to the Capitol Police Board, they went to somebody else in the old days. Correct, they went to- I can't remember who it was. It was three or four people. It was two committees, one on the House side, one on the- I remember, House Committee. Right, because they've always had that ability to do so. They knew even less about who should be removed than our people. I wouldn't agree with that. They absolutely knew who they wanted to be removed. Because again, it's Congress's police force. It's like the architect of the Capitol knows more about policing than the chief of police. I would say this, Your Honor. The architect- You have to agree that it is a strange statute. I would- Not strange, it's unique. It's unique, but I would suggest this, Your Honor, that the architect of the Capitol knows more about policing than an arbitrator who doesn't have a law degree. That's any Johnny or Jane off the street making a decision- Does the architect of the Capitol have a law degree? They have experience in policing the top, the most important target in the world, right? So arbitrators, as you well know, I'm not saying anything you don't know, oftentimes they have no law degrees at all and they have no idea about the CAA or anything related to that. And they are in the position to reinstate someone back to the Capitol Police. That is not what Congress intended. And I just want to leave you with one more thing. Congress specifically adopted 7122A, which prevents any review, this was going back to an arbitrator's review, prevents any review of termination matters. Congress didn't change it, they didn't amend it, they didn't do anything. So I would suggest here, again, that yes, the Capitol Police went to arbitration just pro forma, right? Just to go. But it doesn't mean that the Capitol Police waived its rights to say that an arbitrator does not have statutory jurisdiction over Capitol Police board matters. So simply because we went doesn't mean that we gave up the position that we're arguing today. If there are no further questions, Your Honor. Your very last point. If I were to agree that they could refuse to arbitrate, okay, but when they do agree to arbitrate, you're saying they're not bound. What we're, correct, Your Honor, what we're saying is we go through the system, the system hasn't changed until this point. If the arbitrator comes out with what you wanted to do in the first place, okay, otherwise we aren't going to pay any attention to it? I wouldn't agree with that, Your Honor, because the rules are in place as of today as to how arbitrations, I guess they have exceptions, right? Yes. We don't believe that that's the right rule, but the chief does not want to not follow the existing rules that are in place. Our argument is that those rules are incorrect. We won't be able to make that final determination until this court actually comes out with a rule that's favorable for us. So it's not that we're saying, oh, we went, oh, and we lost, oh, we're going to now try to go to the ULP process. And reckons you went to arbitration. We did. So we're going to follow the rules as the rules are currently laid out, but it doesn't mean that we agree with those rules. That's what I'm trying to convey to you. You're going to continue to raise your jurisdictional arguments until you are foreclosed, until and unless you're foreclosed. That is correct. So if this court- Or whether it's to negotiate over the subject of terminations. That is correct. Like in the September case. That is correct. Or whether it's a case in which somebody was actually terminated and got themselves to arbitration, or whether it's somebody who was disciplined and wants to get to arbitration, you're going to fight it tooth and nail until you're told you can't do it anymore. And that is correct. We're going to always maintain our ability to challenge under the statute, right? But there are current rules in place, and the chief does not want to not follow those rules, but it doesn't mean that he agrees with the rules. What he agrees with is that those rules don't apply, but you can't get to that place until- It's like in any district court in which you want to challenge jurisdiction, you submit the jurisdiction for purposes of challenging it. Exactly, because we believe that the Office of Compliance is acting ultra-virously when they're actually hearing exceptions because Congress adopted 5 U.S.C. 7122, which prevents any exceptions over matters dealing with terminations. But it doesn't mean that since they're acting ultra-virously, that we don't go in that direction, right? Our ultimate response and request is for this court to find that those rules are incorrect and for Capitol Police Board termination decisions to not be reviewable or appealable in any manner. And it's only terminations, right? Or is it 30-day suspensions? Is it all disciplinary matters against the police officers? Anything that would be considered similar to 7512 or 4303, so that would be reassignments, that'd be demotions, any discipline 15 days and over, and terminations. Because when you're reading 7121E, right, it says matters similar to, which are 7512, 4303, in an other personnel system. So we believe we fit there. So it's not just terminations for the 7121 argument. For the special rule argument, that simply deals with terminations. So that's why I said there's three bases in which to reverse the Board of, the Office of Compliance Board of Directors. If there are no further questions. Okay. Thank you all. The case is taken under submission. And that concludes this morning's arguments for this panel. All rise. The Honorable Court is adjourned until tomorrow morning. It's an o'clock a.m.